IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

KEN ALVAREZ, MELISSA ALVAREZ, )
ARTHUR ANDERS, LINDA ANDERS, )
LARRY BARD, LOUISE BARD, )
JAMIE BARNARD, ADRIANNE )
BARNARD, KEITH BEHRENS, )
MICHELLE BEHRENS, ALBERT )
BROWN, LINDA BROWN, KENNETH )
BURKE, LILY BURKE, WILLIAM )
BURNS, ELAINE BURNS, ROBERT )
BURT, LAWRENCE CALLAHAN, )
DIANE CARROLL, SCOTT CLEMENTS, )   Civil Action No. _____
NICOLE CLEMENTS, MICHAEL CRAIG, )
SUSAN CRAIG, TANYA DIORIO, )
THOMAS DYKHOUSE, LINDA )
DYKHOUSE, ORLANDO EVORA, )
CAROLYN EVORA, CHRIS FIORENZI, )
RINA FIORENZI, GLENN FOSS, )
CHRISTINE FOSS, WILLIAM GATTONI, )
DEBORAH GATTONI, CHRISTOPHER )
GOETZ, VICKI GOETZ, FREDRIC )
GOTTLIEB, JOSEPH GRUSSER, )
CATHY GRUSSER, KENNETH )
HANCOCK, DAWN HANCOCK, )
EDITH HANSEN, KEITH HEIMBURG, )
JACK HERZBERG, KRISTINE )
HERZBERG, ED HOCHSTADTER, )
DARA HOCHSTADTER, BRAHAM )
HORWITZ, DIANE HORWITZ, MARK )
IPPOLITO, CARL JAHRSTORFER, )
PAT JAHRSTORFER, HARRY D. )
JONES, CATHY KAUFMAN, STACY )
KAUFMAN, JOHN KELLY, TERESA )
KELLY, KENNETH KOSCO, MICHELE )
KOSCO, THOMAS LANG, STACEY )
LANG, MICHAEL LAVIGNA, HEATHER )
LAVIGNA, SETH LIEBERMAN, GLENN )
LYSACK, JEFF MALFETTI, ANGELA )
MALFETTI, ELAN MANHAM, VERA )
MANHAM, TIMOTHY MCCARTHY, )
LINDA MORARD, OLIVER MORARD, )
ROBERT NAGLE, CHRISTINE NAGLE, )
TED OLKOWSKI, MARTHA )
OLKOWSKI, KAREN PACKMAN, )

| | |
|---|---|
| RANDALL PARKER, MICHELE PARKER, STEPHEN PERCY, RONA PERCY, SCOTT PETROZZINI, JILL PETROZZINI, ROGER PINKHAM, JENNIFER PINKHAM, RANDAL PRICE, MEKOPRICE, BOYKIN ROBINSON, JENNIFER ROBINSON, FRANK SEAGER, CAROL SEAGER, JOHN SEBASTIANO, LAURIE SEBASTIANO, STEPHEN SHOEMAKER, KAREN SHOEMAKER, ALBERT SPAGNUOLO, SANDRA SPAGNUOLO, ANDREW WILDRICK, PAM WILDRICK, MARK ZURAWEL, and LORETTA ZURAWEL, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JAMES ROBERT WARD, | ) ) |
| MICHAEL FLASKEY, | ) ) |
| ROBERT VACKO, | ) ) |
| PAUL BEIDEL, | ) ) |
| and | ) ) |
| DPB SOLUTIONS, LLC, | ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, by counsel, state as follows for their Complaint against Defendants.

NATURE OF THE CASE

1. This case involves a real estate development marketed to the Plaintiffs by an entity or entities controlled by Defendants, through various negligent and/or intentional misrepresentations made directly and through instrumentalities of interstate commerce, including direct mailings, telephone calls, electronic mail, and internet advertisements.

2. Among other claims, this action asserts claims arising from Defendants' breach of duty, neglect, error, misstatement, misleading statement, omission, or act by Defendants in their capacities as directors, officers, or employees of the entities identified herein and their affiliated entities. It also asserts negligence resulting in Plaintiffs' loss of use of tangible property that has not been physically injured.

## PRELIMINARY STATEMENT

3. LR Buffalo Creek, LLC ("LR Buffalo Creek"), through its agents, represented to Plaintiffs that Grey Rock at Lake Lure ("Grey Rock") would be a luxury resort with numerous amenities, as well as roads and utilities to serve the lots in the subdivision.

4. Each of the Defendants directly, or indirectly through one or more intermediaries, controlled LR Buffalo Creek.

5. For the reasons set forth below, Defendants are liable for the LLC's actions as well as their own.

6. At the same time Defendants were making such representations, they knew or should have known that developing the community was impossible because, among other reasons, they were negligently or intentionally permitting or causing the distribution of funds needed to construct the required infrastructure to themselves and to other entities, without consideration, thus rendering LR Buffalo Creek insolvent and unable to meet its financial obligations.

7. Upon information and belief, LR Buffalo Creek collected approximately ninety million dollars ($90,000,000) in revenues from the sale of approximately 435 lots in Grey Rock. As a result of the Defendants' negligent or intentional acts or omissions described herein and their actions in disbursing LR Buffalo Creek's assets in the face of millions of dollars of

development obligations, the infrastructure and amenities were not constructed. On or about October 30, 2008, LR Buffalo Creek, affiliated single purpose entities pursuing similar developments, and their parent company Land Resource, LLC ("Land Resource"), voluntarily filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Middle District of Florida. The various bankruptcy actions have been consolidated and converted into a Chapter 7 liquidation proceeding.[1]

8. LR Buffalo Creek's business model, and that of its affiliated entities, was to sell lots first and build infrastructure later, or not at all. This led to what Defendant Ward has euphemistically called "trailing development obligations." Despite generating approximately $90,000,000 in revenue from the sale of lots and despite its "trailing development obligations," when LR Buffalo Creek filed for bankruptcy protection, it had only $905.00 in cash to its name.

9. During the same time period that Defendants were divesting LR Buffalo Creek of its assets and distributing them to insiders, leaving nothing to fund the required improvements, the entity was suffering multimillion dollar losses. For example, for calendar year 2007, LR Buffalo Creek's Income Statement reflects a loss of $7,517,385.

10. During the period from 2004 to 2008, while simultaneously and actively promoting the sale of lots at Grey Rock, and despite massive contractual liabilities to construct roads, utilities, and amenities for the community, Defendants negligently or intentionally caused LR Buffalo Creek to disburse millions of dollars from the limited liability company, leaving it without sufficient funds to construct the promised infrastructure and amenities. The projected cost for just the roads, drainage, and sediment and erosion control for Phases 1 and 2 of the

---

[1] While litigation against the various corporate entities has been stayed pursuant to 11 U.S.C. § 362, Plaintiffs are unaware of any attempt by the Defendants named in this action to file for bankruptcy protection, and litigation against them is not stayed or affected by the pending bankruptcy.

development exceeded $26,000,000. Based on known soil conditions at the site, even that estimate is likely insufficient.

11. During this same time period, upon information and belief, Defendants and members of LR Buffalo Creek were paid millions of dollars from LR Buffalo Creek and/or affiliated entities such as Land Resource, the parent company to which many or most of LR Buffalo Creek's assets had been "upstreamed" without consideration.

12. Upon information and belief, the source of a substantial amount of the funds Defendants received or permitted others to receive, as detailed below, was from the sale of lots at Grey Rock.

13. Upon information and belief, during 2007 alone, while simultaneously and actively promoting the sale of lots at Grey Rock, and despite massive contractual liabilities to construct roads, utilities, and amenities for the community, Defendants and others paid, caused to be paid, or permitted to be paid, from various affiliated entities, equity distributions in an amount exceeding the sum of $40,000,000. Most of the distributions were received by Defendant James Robert Ward.

14. Further, in 2005 and 2006, while simultaneously and actively promoting the sale of lots at Grey Rock, and despite massive contractual liabilities to construct roads, utilities, and amenities for the community, Defendants and others paid, caused to be paid, or permitted to be paid $4,834,766 in "management fees" to a member of the LLC named Euram Grey Rock Associates, L.P. Further, between January 1, 2005 and December 31, 2007, Defendants and others paid, caused to be paid, or permitted to be paid a total of approximately $5,846,401 to Euram Grey Rock Associates, L.P.

5

15. During the period from January 1, 2005 to December 31, 2007, while simultaneously and actively promoting the sale of lots at Grey Rock and despite massive contractual liabilities to construct roads, utilities, and amenities for the community, Defendants and others paid, caused to be paid, or permitted to be paid approximately $1,940,320 to an LLC member named Realan Investment Partners, LLLP.

16. During the period from January 1, 2005 to December 31, 2007, while simultaneously and actively promoting the sale of lots at Grey Rock and despite massive contractual liabilities to construct roads, utilities, and amenities for the community, Defendants and others paid, caused to be paid, or permitted to be paid approximately $1,940,320 to an LLC member named Weeks-Grey Rock, LLC.

17. During the period from January 1, 2005 to December 31, 2007, while simultaneously and actively promoting the sale of lots at Grey Rock and despite massive contractual liabilities to construct roads, utilities, and amenities for the community, Defendants and others paid, caused to be paid, or permitted to be paid approximately $1,014,296 to an LLC member named Barrington H. Branch.

18. During the period from January 1, 2005 to December 31, 2007, while simultaneously and actively promoting the sale of lots at Grey Rock and despite massive contractual liabilities to construct roads, utilities, and amenities for the community, Defendants and others paid, caused to be paid, or permitted to be paid approximately $702,312 to an LLC member named DPB Solutions, LLC.

19. Upon information and belief, during the period from January 1, 2005 through and including 2008, while simultaneously and actively promoting the sale of lots at Grey Rock and despite massive contractual liabilities to construct utilities and amenities for the community,

Defendants and others disbursed millions of dollars from LR Buffalo Creek to affiliated entities, including Land Resource, rendering it insolvent.

20. LR Buffalo Creek was operated as a sham entity and as an alter ego of the Defendants, who profited or allowed others to profit from these payments and distributions while failing to insure that sufficient funds were left in LR Buffalo Creek's possession to fulfill its contractual obligations.

21. None of the Defendants herein is being sued solely because they participated in the management, control, or ownership of LR Buffalo Creek. Instead, they are being sued for personally profiting or allowing others to profit from the acts and conduct set forth in this Complaint, in circumstances that left the LLC a shell with no assets to perform its development obligations.

22. Some of these disbursements occurred during a period when LR Buffalo Creek was insolvent, thereby giving rise to a fiduciary duty to creditors such as Plaintiffs, to whom the entity owed millions of dollars in development obligations or, alternatively, the refund of their purchase money if the entity did not intend to or could not perform those obligations. During the time period from at least 2005 on, and perhaps earlier, LR Buffalo Creek was not prosecuting its business in good faith and it had no reasonable prospect or expectation of doing so given the continuing defalcations and other obstacles to development described herein.

23. Further, these Defendants, and the other entities they controlled, exercised complete domination over LR Buffalo Creek's policies, finances, and business practices such that piercing the corporate veil as to the claims stated herein is appropriate.

24. Finally, each of the Defendants aided and abetted the commission of the various acts described herein as they acted in concert with each other, they acted pursuant to a common

design, or they each knew that the other's conduct constituted a breach of duty to the Plaintiffs and they gave substantial assistance or encouragement to the others.

## PARTIES

25. Plaintiffs, who are citizens and residents of various states, are all purchasers of lots in the Grey Rock community. Each Plaintiff relied on representations that the community would have certain amenities, including, among others, roads and utilities necessary to serve individual lots. These representations were made both orally and in writing, in promotional materials, Property Reports, and sales contracts.

26. Defendant James Robert Ward ("Ward") is a resident of Orange County, Florida. Upon information and belief, at times relevant to this action, Ward was Founder and president of Land Resource, Inc., the manager of LR Buffalo Creek. Ward also held a 79.9% membership interest in Land Resource, LLC. In turn, Land Resource, LLC held a 75% membership interest in LR Buffalo Creek. LR Buffalo Creek was, therefore, a subsidiary of Land Resource, LLC.

27. Defendant Paul Beidel ("Beidel") is a resident of Fulton County, Georgia. Upon information and belief, at times relevant to this action, Beidel was Vice President of Acquisitions and Development, Executive Vice President, and Chief Operating Officer of Land Resource. Beidel is also the manager of LR Buffalo Creek member DPB Solutions, LLC. He describes his role at Land Resource as follows:

> While there, he developed more than 2,700 lots in 23 gated communities throughout the Mid-Atlantic and Southeastern states. He also played a major role in the development of many coastal, mountain and lakefront communities through the region, including marina and golf communities. Paul's engineering experience played a pivotal role in the company's ability to identify premium development opportunities.
>
> Under Paul's leadership, the company was the first and only developer chosen twice to host the Home and Garden Television Dream Home in two of its

communities: the 2004 HGTV Dream Home in St. Mary's, Georgia, and the 2006 HGTV Dream Home in Lake Lure, North Carolina.

28. Defendant Michael Flaskey ("Flaskey") is a resident of Orange County, Florida. Upon information and belief, at times relevant to this action, Flaskey was Chief Executive Officer of Land Resource. Mr. Flaskey has described his role at Land Resource as follows:

> Mike Flaskey leads Land Resource with a clear vision and a reputation for innovative strategies that yield remarkable returns. Mike is responsible for all operational facets of Land Resource, and his sales and marketing expertise play key roles in guiding the company.

29. Defendant Robert Vacko ("Vacko") is a resident of Fulton County, Georgia. Upon information and belief, at times relevant to this action, Vacko was Chief Financial Officer of Land Resource. Mr. Vacko has described his responsibilities at Land Resource as follows: "Drawing from extensive commercial, residential, multi-family, and retail experience, Rob and his team are responsible for all LR accounting, banking and investor relationships—as well as all IT, HR and insurance-related issues."

## JURISDICTION AND VENUE

30. Jurisdiction is based on 28 U.S.C. § 1331 as this action arises under the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

31. Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred, and the property that is the subject of the action is situated, in this judicial district.

## FACTS

32. The Grey Rock community consists of approximately 4,000 acres and contains approximately 900 home sites.

9

33.     Grey Rock is a "subdivision" as that term is defined by the Interstate Land Sales Full Disclosure Act ("ILSA").  The sale of lots to Plaintiffs was covered by and was not exempt from ILSA.  Land Resource, LR Buffalo Creek, and the Defendants were "developers" as defined in 15 U.S.C. § 1701(5) because they were engaged directly or indirectly in the Grey Rock sales, offered to sell lots in the subdivision, and participated in the interstate advertising of lots for sale in the subdivision.

34.     LR Buffalo Creek and Land Resource grouped certain lots together into phases of various size but they were all part of a common promotional plan.

35.     LR Buffalo Creek and Land Resource marketed Grey Rock as a gated community that would have numerous amenities such as an equestrian center, trails to numerous natural waterfalls, multiple clubhouses, and a club house on Lake Lure.  Marketing materials were displayed over the Internet, e-mailed, and mailed and delivered in interstate commerce.

36.     The amenities also appeared on subdivision plats and various architectural renderings that were provided to Plaintiffs.

37.     Each Plaintiff entered into a standard form Agreement for Lot Purchase whereby it was represented that LR Buffalo Creek would provide, in accordance with Section 9 of the Contract, paved roads, electric service lines, telephone lines, and wells for drinking water.

38.     Defendants acted negligently or fraudulently in that they knew or should have known that the construction of such roads, utilities, and amenities was impossible, based on the diversion of funds described above, and, at the very least, highly unlikely given that as early as 1997, a Rutherford County soil survey cautioned against the construction of a planned development on the Grey Rock site.

39. This soil survey indicates that the property in the Grey Rock development is either unsuitable or poorly suited for dwellings or roads. Defendants negligently ignored or intentionally and fraudulently suppressed this information and negligently failed or intentionally and fraudulently refused to disclose the findings and the existence of the Rutherford County Soil Survey to the Plaintiffs.

40. Based on Defendants' representations, each Plaintiff also reasonably believed that wells would provide an adequate water source to sustain residential homes as the lots were being sold and marketed as residential lots suitable for construction of single-family homes.

41. Based on Defendants' representations, each Plaintiff reasonably believed that each of the lots would be suitable for the permitting and installation of a septic system to sustain a residential home as the lots were being sold and marketed as residential lots suitable for construction of single-family homes.

42. At the same time that Land Resource and LR Buffalo Creek were marketing Grey Rock to the Plaintiffs, the development was under scrutiny from the North Carolina Department of Environment and Natural Resources, Land Quality Division ("NCDENR"). Land Resource began receiving violation notices for erosion and sediment control issues and violations of the erosion control plan as early as February 15, 2005. State inspectors documented erosion violations from early in 2005 through 2006 and fined Land Resource approximately $94,000 for such violations. Eventually, the NCDENR filed suit against Land Resource and LR Buffalo Creek, resulting in a consent judgment.

43. Defendants negligently failed to disclose or fraudulently suppressed these and other problems with the proposed Grey Rock development and instead continued to induce the Plaintiffs and others to buy lots at Grey Rock with negligent or fraudulent misrepresentations

that roads, utilities, infrastructure, and amenities could and would be imminently constructed, when they knew or should have known that they could never construct any infrastructure at Grey Rock and that lots in Grey Rock would ultimately be worthless.

44. LR Buffalo Creek and the Defendants represented in Property Reports that "[w]e are responsible for construction of all interior roads" and further represented that paved asphalt roads would be completed in Phase 1A and Phase lB by September 2005 and that paved asphalt roads would be completed in Phase 2A and Phase 2B by September 2007. To date, the pavement of these roads has not been completed and likely never will be. These representations were either negligent or fraudulent.

45. LR Buffalo Creek and the Defendants also represented in the Property Reports that wells would be provided for the lots and "installed by the developer," with each well serving between one and five lots.

46. The Defendants further represented in the Property Reports as follows: "In the event we are unable to provide you access to a productive well, we will credit you the original purchase price for your lot, which you may use toward the purchase of any other available lot of equal or greater value within the subdivision." LR Buffalo Creek did not provide any access to productive wells and there are presently no lots of a value equal to or greater than the purchase money paid by the Plaintiffs. In fact, the lots in the subdivision are worthless.

47. LR Buffalo Creek and the Defendants further represented in the Property Reports, "[i]f only lesser priced lots are available, we will refund the difference in the purchase price," provided the purchaser reconveyed the original lot by general warranty deed. LR Buffalo Creek is no longer selling lots any lots, lesser priced or otherwise, and the lots available in the

subdivision are practically worthless; therefore, the "difference in the purchase price" is almost one hundred percent.

48. LR Buffalo Creek and the Defendants further represented in the Property Reports that certain community amenities including, but not limited to, club houses, swimming pools, tennis courts, and an equestrian center were planned, with construction estimated to begin in June 2005 and to be completed by December 2008. Construction of such amenities never occurred.

49. While their properties have not been physically injured, Plaintiffs have lost the use and enjoyment of their land due to LR Buffalo Creek's negligence or intentional misrepresentations.

50. LR Buffalo Creek's negligence or intentional misrepresentations have rendered the Plaintiffs' properties virtually unmarketable as none of the would-be residential Lots can be built upon without roads, utilities, and an adequate water source.

51. After Plaintiffs purchased their lots, LR Buffalo Creek periodically sent Plaintiffs letters, informational magazines, and brochures informing them that the development at Grey Rock was proceeding as planned. These statements either were negligently false or intentionally false and calculated to prevent Plaintiffs from discovering the truth.

52. Upon information and belief, as late as April, 2008, Defendant Flaskey assured owners and prospective purchasers in a public meeting that the development was proceeding as planned. These statements either were negligently false or intentionally false and were calculated to prevent Plaintiffs from discovering the truth.

53. Plaintiffs purchased the Grey Rock lots with a reasonable belief that such lots could be built upon and with a reasonable belief that LR Buffalo Creek would install roads,

wells, utilities, and other infrastructure that was essential to allow the issuance of an occupancy permit.

54. Plaintiffs purchased the Grey Rock lots with a reasonable belief that the pools, tennis courts, equestrian center, clubhouses, and other amenities would be constructed.

55. Upon information and belief, Defendants Ward, Beidel, Flaskey and Vacko personally and unlawfully developed, promoted, advertised and marketed the Grey Rock development and sold lots therein as well as managed the finances of Land Resource, LR Buffalo Creek, and the Grey Rock development.

## COUNT 1: VIOLATION OF 15 U.S.C § 1703(a)(2)

56. The previous allegations are incorporated.

57. As set forth more fully above, Defendants, as co-developers of the subdivision, with respect to the sale or offer to sell of a lot or lots not exempt under ILSA, employed a device, scheme, or artifice to defraud; obtained money or property by means of an untrue statement of a material fact, or an omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale) misleading, with respect to any information pertinent to the lot or subdivision; engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon a purchaser; and represented that roads, sewers, water, gas, or electric service, or recreational amenities would be provided or completed by the developer without stipulating in the contract of sale that such services or amenities would be provided or completed.

58. As set forth more fully above, Defendants, as co-developers of the subdivision, made use of instrumentalities of interstate commerce including telephone communications,

14
Case 1:11-cv-00003-MR-DLH   Document 1   Filed 01/06/11   Page 14 of 19

mailing, electronic mail, and internet communications to the Plaintiffs and others in furtherance of the scheme to defraud.

59. Defendants' violations of ILSA caused damages to Plaintiffs.

## COUNT 2: VIOLATION OF THE NORTH CAROLINA DECEPTIVE TRADE PRACTICES ACT

60. The previous allegations are incorporated.

61. Defendants participated in unfair or deceptive acts or practices in a scheme to sell lots at the subdivision, by:

   (a) falsely representing to Plaintiffs that roads, utilities, and various amenities would be constructed while they knew or should have known they could not do so;

   (b) falsely representing to Plaintiffs that roads, utilities, and various amenities would be constructed while the funds available to construct them were being diverted by Defendants;

   (c) using deceptive and false advertising; and,

   (d) breaching their fiduciary duty to Plaintiffs to disclose all material facts regarding the transactions, including the facts identified above, the diversion of funds that were supposed to be used for the construction of infrastructure and other promised improvements, and LR Buffalo Creek's resulting financial inability to complete infrastructure and other promised improvements.

62. The sale of the lots at the subdivision was in or affecting commerce.

63. As a direct and proximate result of Defendants' actions, the Plaintiffs were damaged in an amount to be determined at trial, with their damages to be trebled pursuant to N.C. General Statute 75-16.

## COUNT 3: CONSTRUCTIVE FRAUD

64. The previous allegations are incorporated.

65. As LR Buffalo Creek was approaching insolvency, Defendants owed Plaintiffs a fiduciary duty.

66. As noted above, LR Buffalo Creek was not prosecuting its business in good faith and it had no reasonable prospect or expectation of doing so given the continuing defalcations and other obstacles to development described herein.

67. Defendants breached their fiduciary duty, causing Plaintiffs damages.

68. This breach of duty constituted constructive fraud.

## COUNT 4: NEGLIGENT MISREPRESENTATION

73. The previous allegations are incorporated.

74. Land Resource and LR Buffalo Creek, at the direction of Defendants, supplied false information to the Plaintiffs during the course of their business.

75. Land Resource and LR Buffalo Creek, at the direction of Defendants, supplied this false information for the guidance of the Plaintiffs in the purchase of the lots.

76. The Plaintiffs justifiably relied to their detriment upon the false information provided by Land Resource and LR Buffalo Creek, at the direction of Defendants, in deciding to purchase the lots.

77. Land Resource and LR Buffalo Creek failed to exercise reasonable care or competence in communicating information concerning the purchase of the lots, in an area that involved subject matter requiring expertise and/or investigation beyond the scope of the Plaintiffs' knowledge, opportunity, and capacity to discover in the exercise of reasonable diligence, and involving particular areas of expertise of Land Resource and LR Buffalo Creek.

Land Resource and Buffalo Creek were obligated to disclose the facts stated above and were in the business of disclosing such information to persons in the position of the Plaintiffs.

78. Land Resource, LR Buffalo Creek, and the Defendants undertook a duty to the Plaintiffs when, in the course of their business, they supplied or caused to be supplied false information to the Plaintiffs for the guidance of the Plaintiffs in a business transaction.

79. Land Resource, LR Buffalo Creek, and the Defendants therefore owed a duty to the Plaintiffs and breached that duty.

80. Land Resource's and LR Buffalo Creek's negligent misrepresentations, made or caused to be made at the direction of Defendants, proximately and legally caused and continue to cause the Plaintiffs damages in an amount to be determined at trial.

81. For the reasons stated above, Defendants are liable for the acts and omissions of Land Resource and LR Buffalo Creek.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

(a) That Plaintiffs be awarded compensatory damages in an amount to be determined at trial;

(b) That Plaintiffs be awarded treble damages under N.C. Gen. Stat. 75-16;

(c) That this Court award Plaintiffs pre-judgment and post-judgment interest as provided by law;

(d) That this Court pierce the corporate veils of Land Resource, Inc., Land Resource, LLC, and LR Buffalo Creek, LLC and hold their agents and members liable for the acts and omissions of Land Resource, Inc., Land Resource, LLC and LR Buffalo Creek, LLC;

(e) That this Court hold Defendants liable for the acts and omissions of Land Resource, Inc., Land Resource, LLC, and LR Buffalo Creek, LLC; and,

(f) That this Court award Plaintiffs their attorneys' fees and costs of this action.

JURY DEMAND

Trial by jury is demanded as to all issues so triable.

This the 6th day of January, 2011.

>KEN ALVAREZ, MELISSA ALVAREZ, ARTHUR ANDERS, LINDA ANDERS, LARRY BARD, LOUISE BARD, JAMIE BARNARD, ADRIANNE BARNARD, KEITH BEHRENS, MICHELLE BEHRENS, ALBERT BROWN, LINDA BROWN, KENNETH BURKE, LILY BURKE, WILLIAM BURNS, ELAINE BURNS, ROBERT BURT, LAWRENCE CALLAHAN, DIANE CARROLL, SCOTT CLEMENTS, NICOLE CLEMENTS, MICHAEL CRAIG, SUSAN CRAIG, TANYA DIORIO, THOMAS DYKHOUSE, LINDA DYKHOUSE, ORLANDO EVORA, CAROLYN EVORA, CHRIS FIORENZI, RINA FIORENZI, GLENN FOSS, CHRISTINE FOSS, WILLIAM GATTONI, DEBORAH GATTONI, CHRISTOPHER GOETZ, VICKI GOETZ, FREDRIC GOTTLIEB, JOSEPH GRUSSER, CATHY GRUSSER, KENNETH HANCOCK, DAWN HANCOCK, EDITH HANSEN, KEITH HEIMBURG, JACK HERZBERG, KRISTINE HERZBERG, ED HOCHSTADTER, DARA HOCHSTADTER, BRAHAM HORWITZ, DIANE HORWITZ, MARK IPPOLITO, CARL JAHRSTORFER, PAT JAHRSTORFER, HARRY D. JONES, CATHY KAUFMAN, STACY KAUFMAN, JOHN KELLY, TERESA KELLY, KENNETH KOSCO, MICHELE KOSCO, THOMAS LANG, STACEY LANG, MICHAEL LAVIGNA, HEATHER LAVIGNA, SETH LIEBERMAN, GLENN LYSACK, JEFF MALFETTI, ANGELA MALFETTI, ELAN MANHAM, VERA MANHAM, TIMOTHY MCCARTHY, LINDA MORARD, OLIVER MORARD, ROBERT NAGLE, CHRISTINE NAGLE, TED OLKOWSKI, MARTHA OLKOWSKI, KAREN PACKMAN, RANDALL PARKER, MICHELE PARKER, STEPHEN PERCY, RONA PERCY, SCOTT PETROZZINI, JILL PETROZZINI, ROGER PINKHAM, JENNIFER

PINKHAM, RANDAL PRICE, MEKO PRICE, BOYKIN ROBINSON, JENNIFER ROBINSON, FRANK SEAGER, CAROL SEAGER, JOHN SEBASTIANO, LAURIE SEBASTIANO, STEPHEN SHOEMAKER, KAREN SHOEMAKER, ALBERT SPAGNUOLO, SANDRA SPAGNUOLO, ANDREW WILDRICK, PAM WILDRICK, MARK ZURAWEL, and LORETTA ZURAWEL
By Counsel


*s/ Edward L. Bleynat, Jr.*
Edward L. Bleynat, Jr. [SB#16558]
FERIKES & BLEYNAT, PLLC
21 Broad Street
Asheville, NC 28801
828-251-1588 (o)
828-251-2214 (f)

Steven T. Webster (upon admission *pro hac vice*)
WEBSTER BOOK LLP
300 N. Washington St., Suite 404
Alexandria, VA 22314
*Attorneys for Defendant*